# James F. Todd v. Benjamin Todd.

1. Interpleader—*Controversies Between Heirs.*—A proceeding in equity by a bill of interpleader is a proper proceeding by a person having in his possession moneys belonging to the estate of a deceased person and which is claimed by different heirs.

Memorandum.—In equity.  Appeal from the Circuit Court of Peoria County; the Hon. Thomas M. Shaw, Judge, presiding.  Heard in this court at the May term, 1894, and affirmed.  Opinion filed December 13, 1894.

## Statement of Facts.

On the 10th day of January, 1872, James F. Bonham, a resident of Henry county, died, leaving considerable prop-

Todd v. Todd.

erty and a will. He had no family of his own. The will, after devising a specific tract of land respectively to a sister, a brother, the children of a deceased brother and appellant, recited: " I devise all my other lands and real estate, not hereinbefore disposed of, to Dr. James F. Todd, my nephew. I give and bequeath to my nephew, Benjamin Todd, my railroad stock, also all my other personal estate I give and bequeath to my two nephews, James F. Todd and Benjamin Todd.

These two nephews are brothers and were on intimate terms with their uncle. James was more of a favorite, however, and hence the more liberal provision for him in the will. If the uncle had died intestate each would have received as heir a one-eighth part of the estate.

It was expected and understood before the uncle's death, that James would receive by will a large portion of the estate, and there was some talk between them to the effect that in that event James should make up to Benjamin an amount sufficient to equal a one-eighth part.

After the will was probated proceedings to contest the will were begun by brothers of the deceased. Litigation followed also on several large claims against the estate. Benjamin at this time insisted upon receiving what was bequeathed to him under the will and such an amount as James had agreed to give him to make up a one-eighth part of the estate.

There was considerable cavil between them over the matter, but finally, in July, following the death of the uncle, such a plan of settlement was agreed upon that James conveyed to Benjamin's wife fifty-one acres of land, turned over to Benjamin certain notes and money, and Benjamin executed and delivered to James a quit-claim deed of all title, right and interest to the lands of which James F. Bonham died seized and also the following instrument:

I, Benjamin Todd, of Peoria, Ills., in consideration of the conveyance to me by Dr. James F. Todd, of Kewanee, Illinois, of certain real estate known and described as follows, viz.: The south half of the south west fractional quarter of

section thirty (30), in township fourteen (14) north, range four east in Henry county, Illinois; containing fifty-one and one-half (51½) acres of land, more or less, and of one dollar in hand paid, and divers good and valuable consideration between us moving, do hereby remise, release, transfer and convey unto him, the said James F. Todd, all the right, interest and claim which I now have or may hereafter become entitled to as the heir at law of James F. Bonham, deceased, as under his will, by reason of any of its provisions in and to the personal property and estate of the said James F. Bonham, deceased, saving and excepting herefrom the railroad stock specifically bequeathed to me ·by said James F. Bonham in and by his last will and testament, that is to say, all railroad stock which the said James F. Bonham owned at the time of his death, or to any stock or interest which accrued after, and more especially the stock in the Galva & New Boston road.

Witness my hand and seal this — day of July, A. D. 1872.

BENJAMIN TODD. [SEAL.]

The uncle, at the time of his death, owned a bond for $1,000, dated January 1, 1867, bearing ten per cent interest and executed by the Kansas City & Cameron R. R. Co., which matured January 1, 1892. The existence of this bond was unknown to the two nephews and the execution and the estate was settled up in 1880. It does not seem ever to have been in the possession of the uncle, but in certain deals had by him with the C., B. & Q. R. R. Co. the railroad stock was received by the railroad company and held by it. After it matured, on inquiry made by the railroad company, James F. and Benjamin Todd were discovered. The proceeds amounted to $3,500, and each claimed the whole of it. The railroad company filed a bill of interpleader making the two claimants defendants. Each defendant answered setting out his claim. The company paid the $3,500 into court and was discharged and the litigation over the fund continued between the two claimants.

The cause was referred to the master for proof and findings. The master heard the proof, and finding the issues

for Benjamin Todd, recommended a decree in his favor. Exceptions were filed to the report of the master, the cause was heard on the exceptions and proofs and a decree rendered overruling the exceptions, confirming the master's report, and ordering the money paid to Benjamin Todd.

Winslow Evans, attorney for appellant.

Stevens & Horton and McCulloch & McCulloch, attorneys for appellee.

Mr. Justice Harker delivered the opinion of the Court.

This is a controversy between two brothers, devisees of their uncle's will, as to who shall recover $3,500, the proceeds of an interest-bearing bond which was discovered in the possession of the C., B. & Q. R. R. Co., twenty years after the death of the uncle and twelve years after his estate had been administered upon. The bond was purchased by an agent of the uncle in his lifetime but was never delivered to him. He was the owner of considerable property and was accustomed to deal to some extent in railroad securities. At the time of his death, he owned C., B. & Q. R. R. stock, Quincy Bridge stock, American Central R. R. stock (reported by the executor), and the bond in question, supposed to be C., B. & Q. stock. From the testimony of the executor, Martin Shallenburger, who was the legal and confidential adviser of deceased, we gather that the deceased understood that $1,000 which he had placed in the hands of an agent for investment, had been invested in C., B. & Q. R. R. stock, when, as a matter of fact, it had been invested in a $1,000 Kansas City & Cameron Railroad bond bearing ten per cent interest.

As a basis of his right to the fund, appellant set up that provision of the will which devised all the " other personal " estate to himself and appellee, and the execution and delivery to him, of an assignment of appellee's interest in the personal estate (excepting railroad stock) made July, 1872.

Appellee claims it upon the ground that it was always

supposed by the parties that the fund represented by the bond was railroad stock, and that a contract was made with appellant at the time he delivered a release of his interest in the personal estate to him that such fund, when discovered, and in whatever shape, should belong to and be the property of appellee.

There is a sharp conflict in the testimony of the parties. A careful consideration of it in connection with the testimony of the executor satisfies us, however, that it was understood and agreed by the parties that the bond, or fund, should, when found, be turned over to appellee.

We are of the opinion that the parties both understood before, at the time of, and subsequent to the execution of the release, that the fund was in railroad securities and that appellant agreed that when it should be found, it should be treated as such and taken by appellee.

Appellee is entitled to the fund, not by virtue of the will, but by his contract. While the release executed by him released all his interest as heir and devisee, it did not release an interest which he had by contract or purchase from appellant.

The term railroad stock did not include the $800 in Quincy Bridge stock any more than it did this bond. Considering the release, with these two funds in view, there was a latent ambiguity which it was proper to explain by parol evidence, it would seem. But we are clearly of the opinion that appellee established his claim to the fund by contract, and, therefore, agree with the Circuit Court. Decree affirmed.